```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA

J.D. ECKMAN, INC.                  :       CIVIL ACTION
                                   :
     v.                            :
                                   :
STARR INDEMNITY & LIABILITY        :
COMPANY                            :       NO. 23-1361
```

MEMORANDUM

Bartle, J.                                          August 31, 2023

      Plaintiff J.D. Eckman, Inc., a highway construction company, seeks a declaratory judgment against one of its insurers, defendant Starr Indemnity & Liability Company. Plaintiff asks the court to declare that defendant's second-layer excess insurance policy provides for $4 million of liability coverage per construction project, without limit to the number of projects, during the policy period. Defendant, however, maintains that the policy has an aggregate $4 million limit regardless of the number of projects. Before the court is the motion of the defendant to dismiss plaintiff's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

                                    I

      When reviewing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a

light most favorable to the non-movant." Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n. 27 (3d Cir. 2010)).

The court is generally limited to allegations set forth in the pleadings. See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988). Our Court of Appeals explained that it is proper to consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). Thus, the court may consider the terms of relevant insurance policies.

II

Plaintiff purchased four commercial general liability policies--one primary policy and three excess policies--for the policy period of January 1, 2018 through January 1, 2019.

These policies include per occurrence limits which cap the coverage provided for a single case or incident. They also include aggregate limits which cap the total coverage an insurer will provide during the policy period. What these aggregate limits are is the focus of the pending motion.

According to the complaint, plaintiff faces eight lawsuits related to a July 2018 vehicle accident at its I-83 highway construction project in Dauphin County, Pennsylvania. There were three fatalities as well as other injuries. Plaintiff is also the defendant in two cases involving its I-78 project in Berks County, Pennsylvania where two individuals were killed and two were injured, also in July 2018. Defendant, in response to plaintiff's request for coverage, stated that there is a limit of $4 million in total for all these claims.

Arch Insurance Company ("Arch") issued plaintiff's primary insurance policy. The policy contains a $1 million occurrence limit and a $2 million aggregate limit per construction project without any limit to the number of projects during the policy period. The policy states that "a separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations." Furthermore, the policy makes clear that payments made for a designated construction project "shall not

reduce the General Aggregate Limit . . . ." Thus, for example, if there were four projects where accidents occurred during the policy period, Arch would provide an aggregate of $2 million of coverage per project for a maximum coverage of $8 million.

Plaintiff's first-layer excess policy, issued by Great American Assurance Company ("Great American"), provides a $1 million occurrence limit and a matching $1 million aggregate limit once plaintiff's underlying policy has been exhausted. Plaintiff argues that this policy provides an aggregate of $1 million of coverage per project during the policy period regardless of the number of projects.

Defendant issued plaintiff's second-layer excess policy which provides coverage once the underlying Arch and Great American policies are exhausted. The policy includes a $4 million per occurrence limit as well as a $4 million aggregate limit. The parties, as noted above, dispute whether the aggregate limit is all that will be paid regardless of the number of projects during the policy period or whether the $4 million aggregate applies to each project during the policy period.[1]

---

1. Plaintiff's final, third-layer excess policy, issued by Allied World Assurance Company, is not at issue here. It contains a $16 million occurrence limit and $16 million aggregate limit.

III

The court turns to the language of the policy issued by defendant.  Its coverage limitations are described in Item 4 on the declarations page:

> The Limits of Insurance, subject to all the terms of this Policy, are:
> A. $4,000,000 Each Occurrence
> B. $4,000,000 Other Aggregate(s) Where Applicable
> . . . .

Section I.A. of the policy includes a following form endorsement:

> We will pay on behalf of the Insured, the "Ultimate Net Loss" in excess of the "underlying Insurance" as shown in Item 5. of the Declarations, that the Insured becomes legally obligated to pay for loss or damage to which this insurance applies and that takes place in the Coverage Territory. Except for the terms, definitions, exclusions or limitations of this Policy, the coverage provided by this Policy shall follow the terms, definitions, conditions and exclusions of the applicable First Underlying Insurance Policy(ies) shown in Item 5.A. of the Declarations.

As such, defendant's policy incorporates the "terms, definitions, conditions and exclusions" included in the Arch and Great American policies unless they conflict with those in defendant's policy.

Section II.A.5 of defendant's policy further states:

> The Limits of Insurance of this Policy will apply as follows:

-5-

> . . .
>
> 5. Subject to paragraphs B.2[2] and B.3[3] above, the Other Aggregate Limit stated in Item 4.B of the Declarations [i.e., $4M] is the most we will pay for all "Ultimate Net Loss" . . . that is subject to an aggregate limit provided by the First Underlying Insurance Policy(ies).[4]  The Other Aggregate Limit stated in Item 4.B. applies separately and in the same manner as the aggregate limits provided by the First Underlying Insurance Policy(ies).  [emphasis added]

Plaintiff asserts that defendant's aggregate limit should be applied in the same way as the Arch primary policy and its interpretation of the Great American first-layer excess policy.  The Arch policy includes a coverage limit per project but does not limit the total amount of coverage across projects.  The Great American policy explicitly states that the aggregate limit is the maximum the policy will cover.  The following form endorsement provides that "[t]he aggregate limit applies

---

2.   Paragraph B.2. states:  "If our Limits of Insurance stated in ITEM 4. of the Declarations are less than the total Limits of Insurance stated in ITEM 4. of the Declarations, then our Limits of Insurance shall be that proportion of the 'Ultimate Net Loss' to which our Limits of Insurance apply to the total Limits of Insurance stated in ITEM 4. of the Declarations and apply only in excess of the total Limits of 'Underlying Insurance' scheduled in ITEM 5. of the Declarations."

3.   Paragraph B.3. states:  "Subject to Paragraph B.2. above, the Each Occurrence limit stated in ITEM 4.A. of the Declarations is the most we will pay for the 'Ultimate Net Loss' for loss or damages arising out of any one occurrence to which this insurance applies."

4.   The policy provides for an exception that is not relevant.

-6-

separately and in the same manner as the aggregate limits provided" by the first underlying insurance policy.  Similarly, defendant's policy states that the aggregate limit of $4 million "is the most [the defendant] will pay."

Plaintiff focuses on defendant's policy language in Section II.A.5 which appears after the language that $4 million is most that defendant will pay.  That later language provides that the aggregate limit "applies separately and in the same manner as the aggregate limits provided by the First Underlying Insurance Policy(ies)."  Plaintiff argues that the aggregate limits of the Great American policy as well as defendant's policy should apply "separately and in the same manner" as the primary Arch policy which has no aggregate limit except as to each specific project.  According to plaintiff, the $4 million aggregate applies to the accidents at both the I-83 and I-78 projects for $8 million in total coverage.

Defendant's policy follows the form of the underlying Arch and Great American policies.  This does not mean that all the terms, conditions, and liability limits of defendant's policy are the same as the underlying policies.  "A following form policy has the same terms and conditions as the primary policy, but has a different liability limit." Kropa v. Gateway Ford, 974 A.2d 502, 506 n.2 (Pa. Super. Ct. 2009).  Furthermore, "[i]t is well settled that the obligations of following form

-7-

excess insurers are defined by the language of the underlying policies, <u>except to the extent that there is a conflict between the two policies, in which case the wording of the excess policy will control</u>." <u>Lexington Ins. Co. v. W. Pennsylvania Hosp.</u>, 318 F. Supp. 2d 270, 274 n.3 (W.D. Pa. 2004), <u>aff'd</u>, 423 F.3d 318 (3d Cir. 2005)(emphasis added).  Pennsylvania law is clear that a following form policy can set its own liability limits and include terms that differ from the underlying policy.

While it is undisputed that defendant's policy generally follows plaintiff's primary policy issued by Arch and first-layer excess policy issued by Great American, defendant's following form endorsement has an explicit exception.  It provides that "<u>[e]xcept for the terms, definitions, exclusions or limitations of this Policy</u>, the coverage provided by this Policy shall follow" the underlying insurance policies.  In addition, the language in defendant's policy applying its general aggregate limit "separately and in the same manner as the aggregate limits provided by" the underlying insurance is subject to a limitation.[5]  Defendant's policy states unequivocally "the Other Aggregate Limit stated in Item 4.B of

---

5.  Defendant also contends that this language refers to its occurrence limit which matches its overall aggregate limit.  It is common for excess policies to contain matching per occurrence and aggregate limits. <u>See, e.g.</u>, <u>AstenJohnson, Inc. v. Columbia Cas. Co.</u>, 562 F.3d 213, 217 (3d Cir. 2009).

-8-

the Declarations [i.e., $4M] <u>is the most we will pay for all 'Ultimate Net Loss.'</u>" (emphasis added).  Thus, the language of the policy clearly and unambiguously provides that defendant's total aggregate limit is $4 million regardless of the number of construction projects.  That is "the most" that defendant will pay for "all ultimate net loss."  The later language which plaintiff cites does not contradict this aggregate limitation.  It simply describes the policy as form following to the extent the policy does not explicitly set forth differences from the underlying policies.  Here, the total aggregate limit in defendant's policy is explicitly different from the total aggregate limits in the underlying policies.

In <u>Colony Ins. Co. v. Aspen Specialty Ins. Co.</u>, 564 F. Supp. 3d 343 (D.N.J. 2021), the District Court of New Jersey reached a similar result.  In that case, Aspen Specialty Insurance Co. ("Aspen") offered a "shared risk" insurance plan that covered over 200 bars and restaurants.  The defendant, Colony insurance Co. ("Colony"), provided an excess insurance policy that applied once the coverage provided by Aspen was exhausted.  Although this was not a follow form policy, the policy uses similar language as defendant's policy.  Like defendant's plan, Aspen's plan included an occurrence limit as well as a matching aggregate limit of $1 million.  Furthermore, Aspen's plan, like defendant's plan, stated that the aggregate

limit was "the most we will pay . . . for all damages." Id. at 347. Colony sought to apply Aspen's occurrence limit without restriction.

The court concluded that Colony's interpretation of the policy language "violates a black-letter principle of contract interpretation" by disregarding the policy language which stated that the occurrence limit was subject to the aggregate limit. Id. at 355-56. Furthermore, the court noted that Colony's interpretation would "invalidate the 'the most' language" in the policy "by requiring Aspen to cover more than $1 million in total liquor liability claims." Id. at 356. The court held that the plain language of Aspen's policy meant that Aspen would never have to pay more than $1 million during the policy period. Id. at 357.

In another case against defendant, JRD Unico, Inc. v. Starr Indemnity & Liability Co., a New York appellate court interpreted defendant's follow form excess policy which contained identical language to defendant's policy here.[6] 167 N.Y.S.3d 784 (App. Div. 1st Dep't 2022). Defendant's policy

---

6. Our Court of Appeals has stated that "the basic rules of [contract] interpretation[] are well established and do not differ between New York and Pennsylvania." Pac. Emplrs. Ins. Co. v. Glob. Reinsurance Corp. of Am., 693 F.3d 417, 426 (3d Cir. 2012).

included a $5 million occurrence limit as well as a matching $5 million aggregate limit.  The court stated:

> [T]he only reasonable way to construe the policy language of the Starr policy is that it contains a $5 million per location limit and a $5 million overall aggregate limit of liability.  Reading the Starr policy as plaintiffs contend it should be read--that the $5 million aggregate applied on a per-location basis--would produce a windfall of approximately half a billion dollars, which would not be a reasonable construction.

Id. at 784-85.

Here, plaintiff's interpretation of the contract is similarly unreasonable.  If the court disregarded the language in defendant's policy that limits aggregate coverage to $4 million, plaintiff would be entitled to double that amount now to cover any liabilities from the ongoing cases involving two separate projects.  Furthermore, plaintiff's coverage could be virtually unlimited if it is restricted only by the number of projects without an aggregate limit to cap total coverage.  The court will not interpret the contract in a manner that creates an absurd result.  See, e.g., Great Am. Ins. Co. v. Honeywell Int'l, Inc., Civil Action No. 05-857, 2009 U.S. Dist. LEXIS 117683 at *14 (W.D. Pa. Dec. 17, 2009); Washington Twp. Mun. Auth. v. Am. Arbitration Ass'n, 287 Pa. Super. 78, 429 A.2d 728, 730 (Pa. Super. 1981).

Finally, plaintiff argues that the insurance policy is ambiguous and therefore, under the reasonable expectation doctrine, the policy should be interpreted in its favor. However, the Superior Court of Pennsylvania has explained:

> Our Supreme Court has held that the polestar for determining the parties' intent is the language of the policy itself. This Court has noted that, generally, courts cannot invoke the reasonable expectation doctrine to create an ambiguity where the policy itself is unambiguous. Our Supreme Court has identified only two limited exceptions to this principle: (1) protecting non-commercial insureds from policy terms which are not readily apparent; and (2) protecting non-commercial insureds from deception by insurance agents.

Matcon Diamond, Inc. v. Penn Nat. Ins. Co., 815 A.2d 1109, 1114 (Pa. Super. Ct. 2003) (citations omitted).

The reasonable expectation doctrine does not apply here because the plaintiff is a commercial insured.  Focusing on the policy language, the court finds that the policy is not "reasonably susceptible to more than one interpretation" and therefore is not ambiguous.  Medical Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999).  The court will not look beyond the language of the policy to determine the parties' intent.

Accordingly, the court will grant the motion of the defendant to dismiss plaintiff's complaint for failure to state

a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Case 2:23-cv-01361-HB  Document 13  Filed 08/31/23  Page 13 of 13

-13-